IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHAEL RUSHFORD**,

Petitioner,

v.

**BRAD CAIN**, Superintendent,

Respondent.

Case No. 2:20-cv-01388-IM

**OPINION AND ORDER**

**IMMERGUT, District Judge.**

Petitioner Michael Rushford ("Petitioner"), an individual in custody at Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging his 2011 rape convictions in Linn County, Oregon. Because Petitioner's claims are procedurally defaulted or were denied in a state-court decision that is entitled to deference, the Petition for Writ of Habeas Corpus (ECF No. 2) must be denied.

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On February 16, 2011, a Linn County grand jury returned an indictment charging

Petitioner with two counts of Rape in the First Degree. (Resp't Exs. (ECF No. 16), Ex. 102 at 1-

2.[1]) The postconviction court summarized the facts underlying the charges and the relevant

portions of Petitioner's trial in the Linn County Circuit Court, as follows:

> AM, the daughter of [P]etitioner's former girlfriend, accused [P]etitioner of
> repeatedly engaging in vaginal, anal, and oral intercourse with her when she was
> between about [five] and [ten] years old. She did not disclose the abuse until she
> was nearly [fourteen] years old, and only after she got in trouble with her mother
> and stepfather when they found sexually explicit messages on her phone and
> Myspace account. There was no physical evidence of abuse, but the medical
> director of ABC House [(Dr. Carol Chervenak)] testified that the absence of
> physical findings was typical in cases of sexual assault and did not contradict the
> victim's allegations.
>
> Tim Felling was originally assigned to represent [P]etitioner, but he became
> aware of a conflict, and Arnold Poole [("trial counsel")] was substituted as
> counsel. In transferring the case, Felling wrote a letter to Poole summarizing the
> state of the case and investigation. In that letter, he noted that they had secured
> funding for Dr. William Brady "to review the file and indicate whether there
> should be some physical evidence." He also noted that he had requested, but had
> been denied, funding for Dr. [Daniel] Reisberg, who is "an expert in false
> memories, false confession, planted memories as well as disclosures which are
> tainted by the person doing the interview." He said that another request would
> need to be submitted for Reisberg. Trial counsel ultimately did not call either
> expert.
>
> The trial took place before the judge, without a jury, following [P]etitioner's
> waiver. He signed a written waiver acknowledging that he understood that he had
> a right to a jury trial and, "[a]fter being fully advised, and of [his] own free will,"
> he decided to waive that right. When accepting the waiver, the [trial] court
> conducted a colloquy in which the petitioner indicated that he understood he had
> an absolute right to a jury trial, that he had discussed the matter with his attorney,
> had all of his questions answered[,] and wished to waive his right to a jury trial.
>
> The allegations in this case came to the attention of police while [P]etitioner was
> in prison on unrelated convictions. Officers had [P]etitioner transported to the
> Oregon State Police Barracks for an interview and advised him of his *Miranda*
> rights. During that interview, [P]etitioner described his relationship with the

---

[1] When citing Respondent's Exhibits, the Court refers to the exhibit page numbers
located in the lower right corner of each exhibit.

victim's mother and how he took care of the victim and her younger sister. At that point, he asked what the investigation was about and den[ied] any knowledge when the detective suggested that he knew exactly what it was about. Ultimately, the detective told [P]etitioner that the victim had disclosed years of on-going sexual abuse. Petitioner denied any abuse and then ended the interview. At trial, the prosecution elicited the following testimony from [Detective Dawn Hietala]:

> Q.  Did he ultimately deny?
>
> A.  He denied and then stopped talking to me, period.
>
> Q.  He wouldn't answer any of your questions?
>
> A.  Turned to stone.

Trial counsel did not move prior to trial to exclude the comment or object at trial.

In closing argument, the prosecutor broadly asked the court to find the victim credible, focusing largely on the things the victim said during her interview and testimony that one would not expect a child of that age to know to say in the absence of abuse. Aside from a brief reference to the idea that the [trial] court is to consider the manner in which the witness testifies, the prosecutor did not rely at all on the witnesses' demeanor in his argument.

Trial counsel, however, discussed the victim's demeanor at length:

"One of the things, as a trier of fact, you know you should do is look at how a witness testified, their demeanor. And, you know, we saw no real emotion from [AM] when she was testifying about the subject. Yeah, it might be because she's afraid of testifying, but it was the same lack of emotion we saw on the tape when she was talking to Detective Hietala, except when she's talking about her vacations that she does in Las Vegas. And I didn't even think about this until last night, but Las Vegas, there's an awful lot of opportunities for even a teenager, a young teenager, pre-teenager, to be exposed to some pretty slutty stuff. And when she was on the stand, when she was talking about, you know, describing her houses, you know, there's emotion there, but you know, we didn't see the—you know, in these kind of cases I've seen practically arrows shooting from the eyes of children or somebody just totally bursting into tears. We did not see any of that. So, is that an indication of somebody who is afraid of seeing their abuser or is that someone who is afraid of getting caught in a lie?"

The prosecutor responded to that argument in rebuttal closing:

"I guess I saw a different child up there. I saw a child that stared a hole in this microphone that's sitting up there. That's where her eyes were most all the time. I think I saw her look up once or twice maybe. Her eyes were never directed at the person that had done these things to her. I think her demeanor here in the courtroom was an appropriate demeanor of a victim."

(Resp't Ex. 153 at 1-2.)

The trial court ultimately found Petitioner guilty on both counts. (Resp't Ex. 110 at 208.) Noting that the case turned on the "credibility of the evidence as a whole," the trial court expressly found that AM's testimony was "compelling[,]" explaining:

> When we look at credibility, as the attorneys have mentioned, we look at things such as the manner of testimony, the demeanor, some of the motivations that might be present with people as they testify. So I found [AM] to be a very credible witness. I watched very carefully in the manner that she testified. She didn't appear to be what one might expect to be programmed, in other words someone who is told what to say, maintaining that consistency between those two statements that I've been able to see. Her testimony wasn't scripted. She seemed genuinely upset to me as far as her manner and her demeanor as she testified yesterday as to what had occurred to her.

> I looked at potential motivation, and I didn't see any real motivation for [AM] to be less than candid in what happened to her. Now I understand the argument that's been made that there's a motivation because she got into trouble and quite frankly, whatever trouble she got into was totally independent from this that had occurred to her and occurred to her for an awfully long period of time. I didn't find that there was any motivation that I saw that would affect her credibility in the evidence that she presented.

> In reviewing reasons for non-disclosure as well, she was very forthright with the Court as to her embarrassment, as to her trust in this person, the difference in ages, and I found that as well as being a reason that her testimony was credible to me.

> I also looked at whatever other corroborative evidence that I could see, and I certainly see that [AM's mother] had some very difficult problems herself during these periods of time, to where her attention was not directed perhaps as it should have been with her children.

> But I found in the full disclosure of the facts from the beginning of this episode that there were plenty of opportunities for this Defendant, and I believe that the events that were related . . . occurred. Perhaps most noteworthy is the corroborative -- what I think is corroborative as to the incident that occurred before the incidents that we're talking about where [Petitioner] appears naked in [AM's] bedroom. I think it's totally consistent with Mother not immediately, given her concerns, seeing that as a problem, but now in an afterthought, she wonders about that scenario.

> So looking at the evidence critically, as critically as I need to, I am convinced beyond a reasonable doubt that this Defendant is guilty of both counts, at least two independent counts. Quite frankly, I think the evidence supported more counts than that that had occurred in Linn County during the period of time from June 2nd, 2006 until December 31, 2007, and that [AM], during those periods of time, was under the age of [twelve] years.

PAGE 4 – OPINION AND ORDER

(*Id.* at 205-07.) Over Petitioner's objection, the trial court imposed a 300-month sentence on each count to run concurrently for a total custodial term of fifty years. (Resp't Exs. 101; 111 at 5, 10.)

Petitioner filed a direct appeal, alleging, through appellate counsel, that the trial court had erred when it imposed a 300-month prison sentence on each of the two rape counts. (Resp't Ex. 112 at 11.) Petitioner also filed a *pro se* supplemental brief in which he alleged that the trial court had erred when it used "evidence previously determined as unduly prejudicial to corroborate the complainant[']s accusations[.]" (Resp't Ex. 113 at 2.) The Oregon Court of Appeals ultimately affirmed without opinion, *State v. Rushford*, 261 Or. App. 476 (2014), and the Oregon Supreme Court denied review, *State v. Rushford*, 356 Or. 397 (2014).

Petitioner next filed a petition for postconviction relief ("PCR"). (Resp't Ex. 118.) In his counseled amended petition, Petitioner asserted that trial counsel had provided constitutionally ineffective assistance when he (1) failed to adequately advise Petitioner regarding his waiver of a jury trial; (2) failed to move in limine to exclude testimony concerning Petitioner's post-*Miranda* silence; (3) failed to call several witnesses who could have testified to Petitioner's reputation as an honest and hardworking person; (4) failed to call Dr. Reisberg as an expert witness; and (5) failed to call Dr. Brady as an expert witness. (Resp't Ex. 127 at 4-15.) Petitioner also asserted an ineffective assistance claim based on cumulative error. (*Id.* at 16.) After a trial during which Petitioner testified, the PCR court denied relief on all claims. (Resp't Exs. 152, 153.)

Petitioner appealed, assigning as error the PCR court's denial of relief with respect to only two of Petitioner's six ineffective assistance claims. Specifically, Petitioner's counseled PCR appellate brief challenged trial counsel's failure to call Dr. Reisberg and trial counsel's failure to exclude or object to testimony of Petitioner's post-*Miranda* silence. (Resp't Ex. 154 at

2-3.) Petitioner also filed a *pro se* supplemental brief, assigning as error the PCR court's denial of his ineffective assistance claim concerning trial counsel's failure to call Dr. Brady. (Resp't Ex. 155.) The Oregon Court of Appeals affirmed without opinion. *Rushford v. Cain*, 300 Or. App. 822 (2019).

Petitioner then sought review in the Oregon Supreme Court, raising, through appellate counsel, the same ineffective assistance claims raised in his counseled brief to the Oregon Court of Appeals. (Resp't Ex. 157 at 13-14.) Petitioner again filed a *pro se* supplemental brief, this time challenging as "plain error" the trial court's admission of Dr. Chervenak's testimony "about sexual abuse in the absence of any corroborative physical evidence[.]" (Resp't Ex. 160 at 7.) The Oregon Supreme Court denied review. *Rushford v. Cain*, 366 Or. 259 (2020).

On August 14, 2020, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, raising three grounds for relief:

**Ground One:** Ineffective Assistance of Counsel.

**Supporting Facts:** At trial my attorney failed to call any of our witnesses, expert or otherwise. He failed to stop testimony that was both prejudicial and previously limined [sic]. He failed to ask for proof of reports/studies that were cited from during the States' expert witness testimony.

**Ground Two:** No Jury.

**Supporting Facts:** I was told I couldn't have a jury trial, "as the court lacked a jury manager."

**Ground Three:** Disproportionate sentencing for first time offender.

**Supporting Facts:** I was offered a deal for 8 1/3 years, which I refused and maintained my innocence, as I still do. I was instead given [consecutive] 25 year sentences for a total of 50 years.

PAGE 6 – OPINION AND ORDER

(Pet. (ECF No. 1), at 6-7.[2]) Respondent urges this Court to deny habeas relief, arguing that Petitioner's claims are procedurally defaulted or were denied by a state-court decision that is entitled to deference. (Resp. to Pet. (ECF No. 14) at 1-2.)

## DISCUSSION

### I.    Ground One

In Ground One, Petitioner raises a claim of ineffective assistance of counsel with several subclaims. Specifically, he alleges that trial counsel failed to call expert and character witnesses at trial, failed to exclude prejudicial testimony, and failed to challenge the testimony of the State's expert witness. (Pet. at 6.) Petitioner does not address in his supporting brief all subclaims alleged in Ground One, instead limiting his arguments to trial counsel's failure to call Dr. Brady and Dr. Reisberg as expert witnesses and his failure to exclude or otherwise object to testimony of Petitioner's post-*Miranda* silence. (Pet'r's Br. (ECF No. 45) at 15-30.) This Court considers each claim below.

#### A.    Petitioner's Ineffective Assistance Claim Concerning Trial Counsel's Failure to Call Dr. Brady as an Expert Witness is Procedurally Defaulted

##### 1.    Legal Standards

A habeas petitioner generally must exhaust all remedies available in state court, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court

---

[2] The Court refers to the ECF-assigned pagination when citing to the Petition or the parties' briefing in this case.

may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion requirement "by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process").

If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented and therefore are not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451(2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 2.    Analysis

In his supporting brief, Petitioner asserts that trial counsel rendered ineffective assistance when he failed to call Dr. Brady as an expert witness at trial. (Pet'r's Br. at 22.) Petitioner

asserted a similar claim during his PCR proceedings. (Resp't Ex. 127 at 11-15.) Respondent argues, however, that Petitioner failed to raise his ineffectiveness claim to the Oregon Supreme Court on PCR review, and, because he may no longer do so, it is procedurally defaulted. (Resp. to Pet. at 8.)

With the assistance of appellate counsel, Petitioner appealed the PCR court's denial of relief with respect to only two claims based on trial counsel's failures to call Dr. Reisberg and to exclude or object to evidence of Petitioner's post-*Miranda* silence. (Resp't Ex. 154 at 2-3.) Petitioner also filed a *pro se* supplemental brief, challenging the PCR court's denial of relief on his claim that trial counsel was constitutionally ineffective in failing to call Dr. Brady. (Resp't Ex. 155.)

After the Oregon Court of Appeals affirmed without opinion, PCR appellate counsel advanced only the counseled claims in a petition for review to the Oregon Supreme Court, limiting the specific issues for review, as follows:

> First Question Presented:  In the circumstances of this case, was trial counsel ineffective and inadequate in failing to call an expert witness to testify regarding how a person's demeanor correlates to whether they are telling the truth?

> Second Question Presented:  Was trial counsel ineffective and inadequate for failing to object to the state eliciting testimony from a detective during an interrogation and after Petitioner was read his *Miranda* rights, petitioner was confronted with an accusation of wrongdoing and he became silent?

(Resp't Ex. 157 at 13-14.) In the supporting "argument" section, PCR appellate counsel simply stated that "Petitioner relies on the arguments presented in his brief in the Court of Appeals. *Farmer v. Baldwin*, 346 Or. 67, 73-74, 205 P.3d 817 (2009)." (Resp't Ex. 157 at 13-14,18.) Petitioner also submitted a *pro se* supplemental petition for review, challenging as "plain error" the trial court's admission of Dr. Chervenak's testimony, which allegedly constituted "impermissible vouching[.]" (Resp't Ex. 160 at 5-6.)

PAGE 9 – OPINION AND ORDER

In *Farmer*, the Oregon Supreme Court noted that it "may consider briefs filed in the Court of Appeals to identify and evaluate a party's legal arguments on a question presented on review." *Farmer*, 346 Or. at 73. Specifically, it explained that:

> Briefs filed in the Court of Appeals are available to this court and will be reviewed at that stage if the court or any justice decides to do so. Nothing requires the court or any justice to consider only the petition for review in deciding whether to grant review. The Oregon Rules of Appellate Procedures make that clear. [Rule] 9.07(15) states that one of this court's criteria for granting review is [w]hether the issues are well presented in the briefs.

*Id.* at 72-73 (simplified).

It appears Petitioner's PCR appellate counsel cited *Farmer* to direct the Oregon Supreme Court's attention to the arguments that were raised before the Court of Appeals in support of the two questions presented for review. Petitioner, however, argues that PCR appellate counsel's citation to *Farmer* "incorporate[ed] by reference the pleadings filed in the Oregon Court of Appeals[,]" thus "present[ing] the claims and arguments made in that court for review" and "adequately exhaust[ing]" Petitioner's claim. (Pet'r's Br. at 23-24.) This Court disagrees.

Petitioner did not identify his ineffectiveness claim involving Dr. Brady as a question presented in his counseled or *pro se* petitions for review, nor did he explicitly incorporate by reference the *pro se* supplemental brief presented in the Oregon Court of Appeals. "While the Oregon Supreme Court Justices may choose to review the briefs filed in the lower courts, this choice does not satisfy the federal exhaustion requirement which places the burden on petitioner to raise his federal claims at each and every level of his state court review." *Williams v. Nooth*, No. 3:10-cv-00070-ST, 2013 WL 1703596, at *4 (D. Or. Mar. 21, 2013) (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)), *findings and recommendation adopted*, 2013 WL 1703616 (D. Or. Apr. 15, 2013); *see also Eckert v. Nooth*, Case No. 2:13-cv-01451-MA, 2015 WL 6964177, at *4 (D. Or. Nov. 10, 2015) (rejecting the petitioner's assertion that the Oregon Supreme

PAGE 10 – OPINION AND ORDER

Court's access to the parties' appellate briefing constituted fair presentation under *Farmer*, in part, because the petition for review did not reference specific claims contained in his appellate briefing). Although Petitioner asserts that PCR appellate counsel incorporated by reference all pleadings filed in the Oregon Court of Appeals, the petition for review plainly incorporates only the *arguments* presented in Petitioner's appellate brief and makes no mention of the *pro se* supplemental brief or any other filing. This is not enough. *See Justice v. Cain*, Case No. 2:17-cv-1963-AC, 2021 WL 5133678, at *3 (D. Or. Nov. 2, 2021) (concluding that the "[p]etitioner's statement in [his] petition for review that he 'relies on the *arguments* presented in his brief at the Court of Appeals' . . . is not sufficient to satisfy the federal exhaustion requirement on Petitioner's uncharged misconduct claim, where that *claim* was not included as a question presented in the petition for review"). Petitioner thus failed fairly to present his ineffective assistance claim based on trial counsel's failure to call Dr. Brady, and it is procedurally defaulted. Because Petitioner does not argue cause and prejudice or actual innocence to excuse the default, habeas review is precluded as to Petitioner's ineffective assistance claim involving Dr. Brady.

> **B.    The PCR Court's Denial of Petitioner's Ineffective Assistance Claims Concerning Dr. Reisberg and Petitioner's Post-*Miranda* Silence are Entitled to Deference**

Petitioner argues in his supporting brief that trial counsel rendered ineffective assistance when he failed to consult with and call Dr. Reisberg as an expert witness and when he failed to exclude or otherwise object to testimony concerning Petitioner's post-*Miranda* silence. Petitioner fairly presented these claims to the Oregon courts, and the claims were denied. Because the state-court decisions denying relief were not objectively unreasonable, this Court must defer to those rulings.

1.      **Legal Standards**

i.      **Deference to State-Court Decisions**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The AEDPA thus imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (simplified); *see also White v. Wheeler*, 577 U.S. 73, 76-77 (2015) (acknowledging that the "AEDPA, by setting forth necessary predicates before a state-court judgment may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court") (simplified).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts at hand. *See id.* at 407 (holding that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's

case"). The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *See id.* at 411 (noting that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). Rather, the state court's application of clearly established federal law must be objectively unreasonable. *See id.* at 409 (instructing that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

A federal habeas court may not disturb a state-court decision on factual grounds unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d)(2). Under the "unreasonable determination" clause, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

### ii.    Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy a two-part test. First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Such a showing requires the petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. The first prong thus is satisfied only if "counsel

PAGE 13 – OPINION AND ORDER

made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, it is not enough if counsel's errors had only "some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must have been "so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." *Id.* In making the prejudice determination, the court must "consider the totality of the evidence before the judge or jury." *Id.* at 695.

Analyzing an ineffective assistance of counsel claim under the AEDPA is "all the more difficult" because both standards are "highly deferential and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Accordingly, when considering an ineffective assistance claim under the AEDPA, the relevant question "is not whether counsel's actions were reasonable[,]" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 2.    Analysis

#### i.    Trial Counsel's Failure to Consult and Call Dr. Reisberg as an Expert Witness

Petitioner argues in his supporting brief that trial counsel was ineffective when he failed to consult and call Dr. Reisberg as an expert witness at trial. (Pet'r's Br. at 19-22.) As noted above, Petitioner fairly presented a similar claim during his PCR proceedings, arguing that Dr. Reisberg, a research psychologist and memory expert, "could have testified about witness credibility in general and that studies show it is not possible to accurately determine whether a

person is telling the truth or lying based upon observation by the factfinder." (Resp't Ex. 127 at 12-13.) Petitioner argued that such testimony would have been critical to his defense because the trial judge made credibility determinations based, in part, on observations of AM and Petitioner while they testified. (*Id.* at 13.)

To support his claim, Petitioner presented to the PCR court a letter authored by Dr. Reisberg. (Resp't Ex. 127 at 35-37.) In the letter, Dr. Reisberg opined, based on his review of the trial transcript, trial counsel's file, and other materials, that "the most plausible position for the defense [was] that [AM] was lying." (*Id.* at 36.) Dr. Reisberg explained that, had he been consulted or called as a witness at trial, he would have advanced that theory through testimony "about the nature of *lie detection via observation*." (*Id.*) Dr. Reisberg explained that various studies have confirmed that verbal and non-verbal cues—such as "shifts in eye position, a failure to make eye contact, some amount of fidgeting (often in a hand or a foot), [and] holding a hand near one's mouth"—cannot be used to reliably identify deception, and that "people who focus on these common-sense cues are *less* able to discern whether someone is lying." (*Id.* at 36-37.) Noting that AM's demeanor had been discussed among the attorneys and the trial court, Dr. Reisberg opined that "[e]xpert testimony would have provided a means of making sure these claims were in fact warranted, in light of the available scientific scrutiny of lies, liars, and lie detection." (*Id.* at 37.)

In opposition, the State submitted the declaration of trial counsel, which responded to Petitioner's claims. (Resp't Ex. 148.) With respect to Petitioner's claim concerning Dr. Reisberg, trial counsel explained that his strategy was "to keep the trial simple and concentrate on the concept of reasonable doubt." (*Id.* at 3.) Trial counsel based this strategy on the allegations, which he felt "were . . . fanciful, opportunistic, and . . . blatantly associated with a selfish motive

PAGE 15 – OPINION AND ORDER

of the victim[.]" (*Id.*) Trial counsel explained that, given the "compelling" evidence[3] of "issues

with the victim's credibility," he intended to "assert [at trial] that the alleged victim was lying,

had reason to lie, and that the lie worked in both her and her mother's favor." (*Id.* at 3-4.) Trial

---

[3] Trial counsel identified the following "compelling" evidence of AM's lack of credibilty that he expected to come out at trial:

a)   The victim and her mother freely admitted during the trial that the victim had gotten into trouble for sending inappropriate photographs of herself. The victim then made the allegations and was no longer in trouble.

b)   Even though the allegations were made some three years after the alleged incidents stopped, and were claimed to have occurred over a period of a year and a half, the victim gave no indication of any problem, nor did she exhibit any behavior changes.

c)   Even though the victim had plenty of opportunities to report after major family moves to different cities, her first report was only made after she got in trouble.

d)   The victim's mother admitted that she and petitioner had a falling out years before the allegations were made and that she had told him she would do everything she could to take his parenting time away from their joint child, the victim's younger half-sister, and victim was well aware of that desire.

e)   Although the victim was aware of her mother's dislike of petitioner, it seemed significant that she did not make her allegations when her mother broke up with petitioner, nor did she make her allegations when she overheard a heated discussion about her mother wanting petitioner to agree to an adoption of his daughter. Instead, the allegations were only made when she got in trouble.

f)   Video recordings were made of the victim talking to a detective about the allegations. It seemed significant to victim's lack of credibility that she exhibited no emotion when discussing a man forcing her to have sex over the course of several months or years, yet when the detective changed the subject to a Las Vegas vacation, she became quite animated and showed a lot of emotion.

g)   When the victim's mother was asked about any indications of emotional distress she might have observed in the victim, such as nightmares or depression, she admitted that none were present.

(Resp't Ex. 148 at 4.)

PAGE 16 – OPINION AND ORDER

counsel explained that although he considered consulting with Dr. Reisberg, he understood from Petitioner's previous attorney that Dr. Reisberg could provide testimony "about false or implanted memories or how improper questioning could taint a disclosure[,]" which was not relevant to whether AM was lying. (*Id.* at 4-5.) Trial counsel thus attested that he "made a conscious decision not to call Dr. Reisberg[,]" and that even if he had known that Dr. Reisberg could testify to the issues described in his letter, he would not have changed his strategy or called Dr. Reisberg to testify at trial. (*Id.* at 4-5.)

In addition, the State deposed Dr. Reisberg, who admitted that he had only ever testified about the use of demeanor as a measure of credibility in the context of evaluating a police interrogation or in determining if there is a false memory. (Resp't Ex. 141 at 21, 46.) Dr. Reisberg also acknowledged that, given trial counsel's theory of the case, his testimony was not necessary to establish that "sometimes people lie[,]" that "many people are successful at lying and can tell elaborate and convincing lies[,]" or that "somebody's more likely to lie if they have something to gain by lying." (*Id.* at 43.)

The PCR court ultimately rejected Petitioner's ineffectiveness claim, finding that "[t]rial counsel made a strategic decision to not call Dr. Reisberg" as an expert witness at trial. (Resp't Ex. 153 at 4.) The PCR court explained:

> Trial counsel['s] . . . strategy was "to keep the trial simple and concentrate on the concept of reasonable doubt." . . . His reason for doing so was that, in his opinion, "the allegations were so fanciful, opportunistic, and so blatantly associated with a selfish motive of the victim." He describes a host of compelling facts as supporting that opinion. There were strong arguments to make against the victim's credibility, based entirely on what she and her mother would have testified to at trial. Focusing the case entirely on those strong arguments, rather than introducing experts who could complicate the case and distract from the central theory of defense, was a reasonable decision. Such a decision "might be considered sound trial strategy." Dr. Reisberg testified that the only reasonable defense that he could see in the case was to assert that the alleged victim must be lying. This supports the attorney's strategic decision.

PAGE 17 – OPINION AND ORDER

The claims that Dr. Reisberg should have been called as an expert to testify regarding the use of demeanor to assess credibility only arose after the trial because the trial judge commented on the demeanor of the victim in assessing credibility. There is no evidence that trial counsel should have recognized this issue in advance of trial. Counsel was familiar with Dr. Reisberg. He understood that Dr. Reisberg could offer testimony about "false or planted memories or how improper questioning could taint a disclosure." He had no knowledge that Dr. Reisberg had any expertise in demeanor of witnesses and Dr. Reisberg admitted that he never testified as an expert on the subject.

In this case, trial counsel indicates that he would not have called Dr. Reisberg even if he knew that the professor could offer testimony along the lines described in his letter. Reasonable attorneys would readily make the same decision. His testimony would have, in Dr. Reisberg's own assessment, "undercut trial counsel's argument" in closing in which counsel argued that the alleged victim was not credible, in part, because of her demeanor.

(*Id.* at 4-5.) The PCR court further concluded that Petitioner had failed to prove that Dr.

Reisberg's testimony would have tended to affect the outcome of trial, explaining:

Although the court relied in part on demeanor in finding the victim to be credible, in context it is clear that the court was responding to trial counsel's argument that the victim's demeanor indicated that she was not credible. For the court to give [credit to] Dr. Reisberg's testimony that demeanor is not a useful indicator of credibility, it would have to ignore the law's overwhelming consensus that demeanor is a proper basis for making factual findings.

(*Id.* at 5.)

The PCR court's decision was not objectively unreasonable.[4] As the PCR court

explained, trial counsel's strategy was to "keep the trial simple and concentrate on the concept of

reasonable doubt." (*Id.* at 4.) Because trial counsel viewed AM's allegations as "fanciful,

opportunistic, and [] blatantly associated with a selfish motive[,]" he cultivated a defense theory

---

[4] Because the Oregon Court of Appeals affirmed without opinion, this Court must "look through" to the last reasoned decision on the issue, i.e., the PCR court's denial of Petitioner's ineffectiveness claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (explaining that where the highest state court issues a decision on the merits unaccompanied by its reasons for the decision, a federal habeas court must "look through" to the last reasoned decision issued in a lower state court, and presume the unexplained decision adopted the same reasoning).

based on the possibility that AM was lying. (*Id.*) Given the "host of compelling facts" trial counsel identified in support of that theory, and the "strong arguments" available to attack AM's credibility, trial counsel's desire to avoid calling experts who might "complicate the case" or otherwise "distract from the central theory of the defense" was not unreasonable. Moreover, trial counsel had little use for a false memory expert in advancing his theory of the case, a fact which Dr. Reisberg himself conceded. (*See* Resp't Ex. 141 at 43 (agreeing that his expert testimony was not necessary to establish that "sometimes people lie").) Under these circumstances, this Court cannot conclude that trial counsel's "conscious decision" to not call Dr. Reisberg was deficient.

In addition, Petitioner cannot establish prejudice. As the PCR court noted, the trial court's credibility determinations did not rely solely on demeanor and giving credit to Dr. Reisberg's putative testimony would have required the trial court "to ignore the law's overwhelming consensus that demeanor is a proper basis for making factual findings." (Resp't Ex. 153 at 5.) Thus, the PCR court's conclusion that Petitioner failed to prove that the outcome at trial would have been different if trial counsel had called Dr. Reisberg was not objectively unreasonable.

Upon consideration of the record and Petitioner's arguments, this Court cannot conclude that the PCR court's decision denying relief is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, the PCR court's decision denying relief is entitled to deference, and Petitioner is not entitled to habeas relief on this claim.

###         ii.    Trial Counsel's Failure to Exclude Testimony of Petitioner's Post-*Miranda* Silence

Petitioner argues in his supporting brief that trial counsel was ineffective when he failed to move to exclude testimony concerning Petitioner's "post-*Miranda* silence." (Pet'r's Br. at 29-30.) Petitioner fairly presented a similar claim during his PCR proceedings, arguing that trial

PAGE 19 – OPINION AND ORDER

counsel should have moved to exclude Detective Hietala's testimony that Petitioner refused to answer questions about the alleged abuse during his interview because it was not admissible at trial for any purpose and "created a fundamentally unfair inference that petitioner's silence was an adoptive admission of [AM's] accusations[.]" (Resp't Ex. 127 at 7-8.)

Trial counsel addressed this claim in his declaration, explaining that he did not seek to exclude or otherwise object to testimony of Petitioner's post-*Miranda* silence because he believed "that a judge sitting as a trier of fact [in a bench trial] would [not] give any weight to the fact that a defendant chose not to answer a question while in custody." (Resp't Ex. 148 at 2.) Refuting Petitioner's assertion that his silence could be interpreted as an adoptive admission, trial counsel explained that such argument "might have some weight if his trier of fact had been an emotional and easily impressed jury[,]" but that there was no reason to believe that "a judge who is bound to follow the law" would draw such an inference. (*Id.*) Trial counsel thus attested that because "highlighting the silence by moving to exclude it in front of the same judge who would be the factfinder seemed to serve no purpose[,]" he had declined to do so. (*Id.*)

The PCR court rejected Petitioner's ineffectiveness claim, concluding that trial counsel reasonably decided not to move to exclude or otherwise object to testimony concerning Petitioner's post-*Miranda* silence. The PCR court explained:

> Generally, a defendant's assertion of his right to remain silent is not admissible because the jury may draw an improper conclusion from that evidence. It is improper to use a criminal defendant's post-*Miranda* silence to impeach him or ask the factfinder to infer his guilt. That is not the effect of the testimony here. The testimony was unequivocal that petitioner denied sexually abusing the victim. The sole purpose of the testimony was to give context to the interview and explain its somewhat abrupt conclusion. The prosecution neither sought to impeach petitioner with his silence nor asked the factfinder to infer petitioner's guilt improperly. In addition, this case was tried to judge who would understand that a defendant has the right to remain silent and that no adverse inferences should be drawn from the assertion of that right.

PAGE 20 – OPINION AND ORDER

(Resp't Ex. 153 at 4.) The PCR court also determined that Petitioner failed to prove prejudice, explaining that there was no evidence that the trial judge "drew any improper inference from the evidence regarding Petitioner's assertion of his right to remain silent" and that trial counsel would have simply highlighted the issue for the trier of fact if he had raised it in a pretrial motion. (*Id.*) The PCR court thus denied relief.

The PCR court's ruling was not objectively unreasonable. As the PCR court noted, the "effect" of Detective Hietala's testimony was not to use Petitioner's silence as a method of impeachment or to encourage the factfinder to infer Petitioner's guilt. (Resp't Ex. 153 at 4.) Rather, "the sole purpose of the testimony was to give context to the interview and explain its somewhat abrupt conclusion." (*Id.*) Moreover, "this case was tried to judge who would understand that a defendant has the right to remain silent and that no adverse inferences should be drawn from the assertion of that right." (*Id.*) Indeed, "judges routinely hear inadmissible evidence [during bench trials] that they are presumed to ignore when making decisions." *Harris v. Rivera,* 454 U.S. 339, 346 (1981) (per curiam); *see also Williams v. Illinois,* 567 U.S. 50, 69 (2012) (explaining that "[w]hen the judge sits as the trier of fact, it is presumed the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose"). Given these circumstances, trial counsel reasonably concluded that challenging the evidence of Petitioner's post-*Miranda* silence to the trial judge sitting as factfinder would have "serve[d] no purpose[,]" and his decision to forgo a motion to exclude or otherwise object to such evidence was not deficient performance.

In addition, Petitioner cannot establish prejudice. Although Detective Hietala's testimony mentioned Petitioner's refusal to answer questions after learning of the allegations, her testimony also was "unequivocal that petitioner denied sexually abusing the victim." (Resp't Ex. 153 at 4.)

Moreover, there is no evidence in the record to suggest that the trial court drew any improper inferences from Detective Hietala's testimony, and it appears that any effort to exclude or object to such evidence would have done little more than highlight the issue to the trial judge serving as factfinder. (Resp't Ex. 153 at 4.) Thus, it does not appear from the record that the outcome at trial would have been different if trial counsel had moved to exclude evidence of Petitioner's post-*Miranda* silence.

This Court concludes that the record supports the PCR court's determination that trial counsel was not ineffective in failing to exclude evidence of Petitioner's post-*Miranda* silence and therefore it was not objectively unreasonable. Accordingly, the PCR court's decision is entitled to deference, and Petitioner is not entitled to habeas relief on this claim.

## II.    Petitioner is not Entitled to Habeas Relief on his Unargued Claims

Petitioner does not advance the merits of his other claims—specifically, the remaining portions of Ground One and Grounds Two and Three. In addition, Petitioner does not challenge Respondent's arguments that those grounds are procedurally defaulted or were denied by a state-court decision that is entitled to deference. Accordingly, habeas relief is precluded as to the remaining portions of Ground One and Grounds Two and Three because he has failed to sustain his burden of demonstrating entitlement to habeas relief on those claims. *See* 28 U.S.C. 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus . . . , if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case).

///

///

PAGE 22 – OPINION AND ORDER

## <u>CONCLUSION</u>

For the reasons stated, this Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 2), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 30th day of September, 2023.

/s/ Karin Immergut
Karin J. Immergut
United States District Judge